IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:16-CR-120-D-11

UNITED STATES OF AMERICA          )
                                  )
                                  )
            v.                    )
                                  )        **ORDER**
                                  )
DAVID ELIJAH SMITH,               )
                                  )
            Defendant.            )

On November 30, 2017, David Elijah Smith ("Smith" or "defendant") pleaded guilty, without a written plea agreement, to one count of transferring a firearm to a prohibited person in violation of 18 U.S.C. § 922(d) (count ten) and one count of possession of a firearm by a felon in violation of 18 U.S.C. § 922(g) (count eleven). See [D.E. 354]. The statutory maximum for count ten is ten years' imprisonment. The statutory maximum for count eleven also is ten years' imprisonment unless the Armed Career Criminal Act ("ACCA") applies. See 18 U.S.C. § 924(e). Smith's presentence investigation report ("PSR") recommended that Smith be subject to the ACCA based on his three prior convictions for (1) Delaware third-degree burglary, (2) assault with a deadly weapon with intent to kill inflicting serious injury, and (3) possession with intent to distribute cocaine base. See PSR [D.E. 440] ¶¶ 78, 114, 118. Under the ACCA, Smith faced a statutory minimum on count eleven of fifteen years' imprisonment and a statutory maximum of life imprisonment.

On June 13, 2018, the court issued a Rule 32(h) notice, stating that the court doubted whether Smith's Delaware third-degree burglary conviction qualified as a predicate offense under the ACCA, and informed the parties that it was contemplating an upward departure under U.S.S.G. §

4A1.3(a)(1). See [D.E. 454]; Fed. R. Crim. P. 32(h). On June 19, 2018, the court held Smith's sentencing hearing. See [D.E. 459]. At the sentencing hearing, the court concluded that Smith's criminal record did not make him an armed career criminal under the ACCA. After ruling on certain other objections, the court calculated Smith's total offense level to be 23, his criminal history category to be III, and his advisory guideline range on counts ten and eleven to be 57 to 71 months' imprisonment. The court then exercised its discretion to upwardly depart, upwardly departed to an advisory guideline range of 100 to 125 months' imprisonment, considered all relevant factors under 18 U.S.C. § 3553(a), and sentenced Smith to 120 months' imprisonment on each count to run concurrently. The court enters this order to explain Smith's sentence.

## I.

### A.

On June 18, 2018, Smith's counsel moved to withdraw [D.E. 458]. At the sentencing hearing, Smith's counsel again moved to withdraw because Smith wanted to represent himself. The court conducted an extensive colloquy with Smith to ensure his request to represent himself was (1) clear and unequivocal, (2) knowing, intelligent, and voluntary, and (3) timely. See Faretta v. California, 422 U.S. 806, 832–36 (1975); United States v. Frazier-El, 204 F.3d 553, 558 (4th Cir. 2000). As part of that process, the court reminded Smith that he has a constitutional right to have a lawyer represent him and that the court could appoint Smith a new lawyer and continue the sentencing hearing if Smith so desired. The court then questioned Smith concerning Smith's legal knowledge and reminded Smith of the maximum statutory penalties he faced for his offenses. The court also advised Smith that if the court permitted Smith to proceed pro se, then he would take the case as he found it. Smith then made a knowing, intelligent, and voluntary decision to proceed pro se and to represent himself at the sentencing hearing. Thus, the court granted counsel's motion to

2

withdraw and allowed Smith to proceed pro se.

B.

David Smith is the step-grandfather of Kejuan Smith, a five star general in the Nine Trey Billy Badass street gang, a subset of the United Blood Nation. See PSR ¶ 15. This case arose out of law enforcement's investigation into the criminal activities of the Nine Trey Billy Badass street gang in and around Wilmington, North Carolina. See id. The investigation revealed that gang members were trafficking narcotics and firearms, and engaging in violence in and around Wilmington, North Carolina. See id. On July 13, 2016, law enforcement obtained a federal Title III wiretap on Kejuan Smith's cellular telephone. See id. ¶ 16. In late July 2016 and early August 2016, intercepted communications revealed that Kejuan Smith had an argument with the leader of a United Blood Nation set in Goldsboro, North Carolina. See id. ¶ 26. As a result of this argument, Kejuan Smith contacted his subordinate gang members and directed them to gather the gang's firearms to prepare for a shoot-out with members of the United Blood Nation set in Goldsboro. On August 1, 2016, when Kejuan Smith was gathering firearms for the shoot-out, David Smith agreed to sell Kejuan Smith three .45 caliber handguns and a ballistic vest. See id. ¶ 27. In later conversations, David Smith informed Kejuan Smith that he was able to obtain only one .45 caliber handgun and a ballistic vest. David Smith then sold those two items to his step-grandson Kejuan Smith. On August 4, 2016, law enforcement executed a search warrant at Kejuan Smith's girlfriend's residence. During the search, law enforcement recovered thirteen firearms, including the .45 caliber handgun and the ballistic vest that David Smith sold to Kejuan Smith.

Before Smith's sentencing hearing, the United States Probation Officer ("probation") prepared the PSR. See [D.E. 440]. After detailing Smith's extensive criminal history and calculating a criminal history category of III, probation determined that Smith was an armed career

3

criminal based on three prior convictions: (1) a Delaware conviction for third-degree burglary, see PSR ¶ 64; (2) a North Carolina conviction for assault with a deadly weapon with intent to kill inflicting serious injury, see id. ¶ 70; and (3) a federal conviction for possession with intent to distribute cocaine base (crack). See id. ¶¶ 73, 78, 114, 118.

Next probation determined Smith's base offense level was 20 under U.S.S.G. § 2K2.1(a)(4)(A). Probation increased Smith's base offense level by two levels under U.S.S.G. § 2K2.1(b)(1)(A), which applies if the offense involved between three and seven firearms. See id. ¶ 107. Probation increased Smith's base offense level by four levels under U.S.S.G. § 2K2.1(b)(5), which applies if the defendant trafficked firearms. See id. ¶ 108. Probation also increased Smith's base offense by four levels under U.S.S.G. § 2K2.1(b)(6), which applies if the defendant transferred any firearm with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense. See id. ¶ 109. Finally, probation reduced Smith's adjusted offense level of thirty by three levels for acceptance of responsibility. See id. ¶¶ 114–117.

Smith made four objections to the PSR. See PSR Add. First, Smith argued that he did not commit the two instant offenses while under a criminal justice sentence, and thus, he improperly received two criminal history points. Cf. PSR ¶ 77. Second, Smith objected to receiving a four-level increase for trafficking firearms under U.S.S.G. § 2K2.1(b)(5). Third, Smith objected to receiving a four-level increase for transferring a firearm with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense. Lastly, Smith objected to receiving the ACCA enhancement and argued that his Delaware third-degree burglary conviction is not a predicate offense. During the sentencing hearing, Smith added an additional objection contending that his base offense level should not have been increased under U.S.S.G. § 2K2.1(b)(1)(A) because his offense did not involve between three and seven firearms.

At Smith's sentencing hearing, the court heard arguments from the government and Smith concerning Smith's objections. The court found that Smith properly received two criminal history points for committing the offense while under a criminal justice sentence. Under section 4A1.1(d), two criminal history points are added "if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." The term "criminal justice sentence" means "a sentence countable under § 4A1.2 . . . having a custodial or supervisory component, although active supervision is not required for this subsection to apply." U.S.S.G. § 4A1.1, Application Note 4. Furthermore, a defendant "who commits the instant offense while a violation warrant from a prior sentence is outstanding (e.g., a probation . . . violation warrant) shall be deemed to be under a criminal justice sentence for the purposes of this provision if that sentence is otherwise countable, even if that sentence would have expired absent such warrant." Id. Smith was on probation until February 17, 2016. Before the end of his probation, Smith violated the terms of his probation and absconded. See PSR ¶¶ 74, 77. Law enforcement issued a warrant for Smith's arrest which tolled his time on probation. See id. After Smith was arrested, his probation was extended for an additional year. See id. On August 1, 2016, Smith committed the instant offenses. Thus, Smith was on probation at the time of the offenses. See U.S.S.G. § 4A1.1(d), Application Note 4; United States v. Weathers, 95 F. App'x 31, 32 (4th Cir. 2004) (per curiam) (unpublished); United States v. Davis, 313 F.3d 1300, 1305–06 (11th Cir. 2002).

The court then heard evidence on Smith's second and third objections, as well as his objection concerning the number of firearms involved in the offenses. The government presented the testimony of Officer Lonnie Waddell, a police officer for the Wilmington Police Department and task force officer for the FBI. After considering the evidence presented, the government's

arguments, and Smith's arguments, the court credited Officer Waddell's testimony and found that Smith initially agreed to sell three .45 caliber handguns and a ballistic vest to Kejuan Smith. Ultimately, Smith sold only one .45 caliber handgun and a ballistic vest to Kejuan Smith. The court then ruled on each of the objections.

As for Smith's objection concerning a two-level increase under U.S.S.G. § 2K2.1(b)(1)(A), section 2K2.1(b)(1)(A) directs a court to count all firearms that were "unlawfully sought to be obtained, unlawfully possessed, or unlawfully distributed." See U.S.S.G. § 2K2.1(b)(1)(A), Application Note 5. As noted, Smith originally agreed to sell three firearms to Kejuan Smith. Accordingly, the court overruled Smith's objection.

As for Smith's objection concerning a four-level increase under U.S.S.G. § 2K2.1(b)(6), a court increases a defendant's base offense by four levels if the defendant "possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B). "Another felony offense" means "any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." Id., Application Note 14(C). Smith knew that his step-grandson, Kejuan Smith, was a gang leader, that he was a drug dealer, and that he engaged in violent activity. Smith's knowledge of these activities is sufficient to warrant this enhancement. See, e.g., United States v. Harris, 552 F. App'x 432, 438 (6th Cir. 2014) (per curiam) (unpublished) ("[Defendant's] decision to transfer the stolen handgun to a known drug dealer gave him reason to believe that the firearm would be used in connection with another offense."); United States v. Chanthachack, 483 F. App'x 580, 581–82 (1st Cir. 2012) (per curiam) (unpublished). Accordingly, the court overruled Smith's objection.

As for Smith's objection concerning a four-level increase under U.S.S.G. § 2K2.1(b)(5), this enhancement applies if the defendant engaged in the trafficking of two or more firearms. See U.S.S.G. § 2K2.1(b)(5) & Application Note 13. The commentary to the guidelines describes the type of conduct that qualifies as "trafficking." See id. The government argued that Smith trafficked two or more firearms because he initially agreed to sell Smith three firearms. The court, however, declined to apply both the section 2K2.1(b)(5) and the section 2K2.1(b)(6)(B) enhancements because both enhancements were premised on the same underlying conduct. See United States v. Young, 811 F.3d 592, 600–04 (2d Cir. 2016); United States v. Guzman, 623 F. App'x 151, 155–56 (5th Cir. 2015) (per curiam) (unpublished); United States v. Johns, 732 F.3d 736, 740 (7th Cir. 2013); but cf. United States v. Rodriguez, 884 F.3d 679, 680–81 (7th Cir. 2018). Accordingly, the court sustained Smith's objection.

As for Smith's ACCA objection, the court sustained this objection and held that Smith's Delaware third-degree burglary conviction was not a predicate offense under the ACCA. To determine whether a prior conviction qualifies as an enumerated crime of violence under the ACCA, a court must determine "whether the elements of the crime of conviction sufficiently match the elements of the listed generic crime, while ignoring the particular facts of the case." United States v. White, 836 F.3d 437, 444 (4th Cir. 2016) (quotation and alterations omitted); see Mathis v. United States, 136 S. Ct. 2243, 2248 (2016). If the elements of a state crime are the same as, or narrower than, the generic definition, a conviction for the state offense qualifies as a conviction for a crime of violence. See White, 836 F.3d at 444–45. "But if the [state] statute sweeps more broadly than the generic crime, a conviction under that law cannot count as an ACCA predicate, even if the defendant actually committed the offense in its generic form." Descamps v. United States, 570 U.S. 254, 261 (2013).

7

A defendant's conviction qualifies as a "burglary" conviction under section 924(e)(2)(B) if "regardless of its exact definition or label [it] ha[s] the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." Taylor v. United States, 495 U.S. 575, 598 (1990); see White, 836 F.3d at 445. A conviction under a burglary statute that "includ[es] places, such as automobiles and vending machines, other than buildings" does not qualify as a conviction for generic burglary. Taylor, 495 U.S. at 598–99. Generic burglary must be "committed in a building or enclosed space . . . not in a boat or motor vehicle." Shepard v. United States, 544 U.S. 13, 15–16 (2005). In Mathis, the parties did not dispute that Iowa's burglary statute reached farther than generic burglary when the statute covered "any building, structure, or land, water, or air vehicle." Mathis, 136 S. Ct. at 2250 (alteration omitted).

Delaware's third degree burglary statute provides that "[a] person is guilty of burglary in the third degree when the person knowingly enters or remains unlawfully in a building with intent to commit a crime therein." 11 Del. C. § 824. A "building" is defined as "any structure, vehicle or watercraft." 11 Del. C. § 222(1). Thus, because the Delaware third-degree burglary statute covers more than "buildings and structures," it sweeps more broadly than generic burglary. See White, 836 F.3d at 445; United States v. Shabazz, No. 15–20–LPS, 2017 WL 4684180, at *7–10 (D. Del. Oct. 18, 2017) (unpublished), appeal docketed, No. 17-3512 (3d Cir. Nov. 17, 2017); cf. United States v. Henriquez, 757 F.3d 144, 148–49 (4th Cir. 2014). Accordingly, Smith is not an armed career criminal under the ACCA.

II.

The Supreme Court has described the process for imposing a sentence under the now-advisory sentencing guidelines:

[A] district court should begin all sentencing proceedings by correctly calculating the

8

applicable [United States Sentencing] Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the [18 U.S.C.] § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.

Gall v. United States, 552 U.S. 38, 49–50 (2007) (footnote and citations omitted); see Pepper v. United States, 562 U.S. 476, 490–97 (2011); Nelson v. United States, 555 U.S. 350, 350–52 (2009) (per curiam); Spears v. United States, 555 U.S. 261, 261–65 (2009) (per curiam); Kimbrough v. United States, 552 U.S. 85, 101 (2007) ("[W]hile the statute still requires a court to give respectful consideration to the Guidelines, [United States v.] Booker[1] permits the court to tailor the sentence in light of other statutory concerns as well." (citations & quotation omitted)); Rita v. United States, 551 U.S. 338, 357–58 (2007); United States v. Diosdado-Star, 630 F.3d 359, 363–66 (4th Cir. 2011); United States v. Carter, 564 F.3d 325, 328–30 (4th Cir. 2009); United States v. Evans, 526 F.3d 155, 160–61 (4th Cir. 2008); United States v. Pauley, 511 F.3d 468, 473 (4th Cir. 2007). The court recognizes its duty within this framework to "make an individualized assessment based on the facts presented," Gall, 552 U.S. at 50, and to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [the sentencing statute]." 18 U.S.C. § 3553(a); see, e.g., Spears, 555 U.S. at 262–65; Kimbrough, 552 U.S. at 100–01; Carter, 564 F.3d at 328–30.

## A.

First, the court must calculate the applicable advisory guideline sentencing range. See, e.g.,

---

[1] 543 U.S. 220 (2005).

9

Gall, 552 U.S. at 49–50. After ruling on each of Smith's objections, the court calculated Smith's advisory guideline range on each count to be 57 to 71 months' imprisonment. See Sentencing Tr. at 46–50. The court next must determine whether a sentence within the applicable advisory guideline sentencing range serves the factors set forth in 18 U.S.C. § 3553(a) and, if not, select a sentence within statutory limits that does serve those factors. See, e.g., Gall, 552 U.S. at 49–50; Pauley, 511 F.3d at 473. In doing so, the court looks to whether a departure is appropriate based on the sentencing guidelines or relevant case law. See Diosdado-Star, 630 F.3d at 366; Pauley, 511 F.3d at 473. The court also must consider whether the factors set forth in 18 U.S.C. § 3553(a) warrant a variance. See Diosdado-Star, 630 F.3d at 366; Pauley, 511 F.3d at 473. Provided that "at least one rationale is justified and reasonable," "the method of deviation from the Guidelines range . . . is irrelevant." Diosdado-Star, 630 F.3d at 365–66.

Smith's criminal history category is III. An upward departure may be warranted when a defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that defendant will commit other crimes. See U.S.S.G. § 4A1.3(a)(1); United States v. Myers, 589 F.3d 117, 125 (4th Cir. 2009); United States v. Lawrence, 349 F.3d 724, 726–27 (4th Cir. 2003). Under section 4A1.3(a)(4)(A), "the court shall determine the extent of a departure under this subsection by using, as a reference, the criminal history category applicable to defendants whose criminal history or likelihood to recidivate most closely resembles that of the defendant's." U.S.S.G. § 4A1.3(a)(4)(A). The background commentary to section 4A1.3 recognizes that "the criminal history score is unlikely to take into account all the variations in the seriousness of criminal history that may occur." U.S.S.G. § 4A1.3 cmt. background. For example, "a defendant with an extensive record of serious, assaultive conduct who had received what might now be considered extremely lenient treatment in the past might have the same criminal

history category as a defendant who had a record of less serious conduct." Id. In conducting this determination, the court may "move to successively higher categories only upon finding that the prior category does not provide a sentence that adequately reflects the seriousness of the defendant's criminal conduct." United States v. Cash, 983 F.2d 558, 561 (4th Cir. 1992).

First, the court determined that an upward departure under section 4A1.3(a) was appropriate and that the court should increase Smith's criminal history category. Smith is 63 years old and has a deeply troubling history of relentless criminal conduct. When not incarcerated, Smith has spent most of his adult life committing crimes, resulting in 23 convictions. Smith's criminal conduct began at age 18 when he was convicted of three counts of assault and disrespect towards an officer. See PSR ¶ 58. At age 22, Smith was convicted of escaping from custody after being arrested on robbery charges. See id. ¶ 59. In his mid- to late twenties, Smith was convicted of carrying a concealed weapon, obstructing a police officer, theft (on two occasions), assault, and burglary. See id. ¶¶ 60–65. While in his thirties, Smith was convicted of criminal contempt, being found in a building with the intent to commit larceny, assault on a department of correction employee, escape, assault with a deadly weapon with intent to kill inflicting serious injury, and possession of cocaine. See id. ¶¶ 66–72. At age 39, Smith obtained federal convictions for possession with intent to distribute cocaine base (crack), maintaining a dwelling for the purpose of distributing controlled substances, possession of a firearm by a convicted felon, and employment of a person under 18 years of age to distribute controlled substances. See id. ¶ 73. Smith originally received a sentence of 780 months' imprisonment for these convictions but his sentence was later reduced to 188 months' imprisonment after a series of appeals and habeas petitions. While incarcerated on his federal sentence, Smith received sanctions for two incidents of refusing to obey an order, possessing a non-hazardous tool, assault without serious injury, destroying property $100 or less, refusing work or

program assignment, being insolent to a staff member, possessing a dangerous weapon, threatening bodily harm, failing to stand for count, four incidents of fighting with another person, and two incidents of disruptive conduct. See id. In November 2012, Smith was released from federal custody and began his term of supervised release. See id. Despite being given a second chance, Smith squandered the opportunity and returned to serious criminal behavior. Specifically, while on supervised release, Smith repeatedly violated the terms of his release by participating in new criminal conduct, failing to notify his probation officer ten days before changing his address, testing positive for drug use, failing to participate in a drug and alcohol addiction program, and failing to participate in a urinalysis program. See id. In May 2016, the court revoked Smith's supervised release and sentenced him to 60 days custody. See id. Moreover, in October 2013, at age 59, Smith was convicted of assault on a female and injury to personal property. See id. ¶ 74. While on state probation for this offense, Smith violated his probation by failing to meet monetary obligations, failing to report as directed, testing positive for drug use, engaging in new criminal conduct, and absconding from supervision. See id. Smith's criminal history reflects that he has a complete lack of respect for the law, he has performed poorly on probation and supervised release, and (despite his age) has a near certain likelihood of recidivism.

Smith's criminal activities began nearly 45 years ago. Thus, the time-period limitations in U.S.S.G. § 4A1.2(e) result in the majority of his convictions being unscored. In light of the entire record, the court found that Smith's criminal history, spanning nearly 45 years, reflects recidivism and a near certain likelihood of future recidivism. See U.S.S.G. § 4A1.3(a)(1). The court also found that criminal history category III woefully fails to account for the nature and seriousness of Smith's criminal history or the likelihood that he will commit other crimes. An upward departure based on a similar combination of many of the above stated facts — namely, an extensive history of criminal

12

conduct, a history of lenient treatment, and a serious risk of recidivism — is supported by case law. See, e.g., Myers, 589 F.3d at 125–26; United States v. Grubbs, 585 F.3d 793, 803–05 (4th Cir. 2009); United States v. Whorley, 550 F.3d 326, 339–43 (4th Cir. 2008); Evans, 526 F.3d at 159–60, 162–66; United States v. Harris, 241 F. App'x 88, 91 (4th Cir. 2007) (per curiam) (unpublished); United States v. Denkler, 232 F. App'x 336, 340–41 (4th Cir. 2007) (per curiam) (unpublished); United States v. Lamb, 155 F.3d 562, 1998 WL 413995, at *4 (4th Cir. 1998) (per curiam) (unpublished table decision).

Next, the court addressed the extent of the upward departure. A district court may exercise its discretion under the guidelines not to depart. See, e.g., Cash, 983 F.2d at 561. A court that elects to depart upwardly under section 4A1.3 must move horizontally across successive criminal history categories up to category VI, and, if category VI is inadequate, the court must vertically traverse to successively higher offense levels. See, e.g., U.S.S.G. § 4A1.3(a)(4); United States v. Dalton, 477 F.3d 195, 200 (4th Cir. 2007). From category VI, the court must "structure the departure by moving incrementally down the sentencing table to the next higher offense level in Criminal History Category VI until it finds a guideline range appropriate to the case." U.S.S.G. § 4A1.3(a)(4)(B). A court is free to depart more than one category or level. See, e.g., Dalton, 477 F.3d at 199. Furthermore, a court need not "go through a ritualistic exercise in which it mechanically discusses each criminal history category [or offense level] it rejects en route to the category [or offense level] that it selects." Id. (quotation omitted) (alterations in original).

Having found that Smith's criminal history category was woefully inadequate, the court exercised its discretion to depart. Based on the entire record, the court found that criminal history category III did not remotely reflect the extent and nature of Smith's criminal history or his near certain likelihood of recidivism. Smith defies recidivism statistics and has demonstrated an

13

extraordinary commitment to criminality throughout his entire life. Accordingly, the court moved horizontally up to a criminal history category of VI. See, e.g., United States v. Rivera-Santana, 668 F.3d 95, 104 (4th Cir. 2012); United States v. McNeill, 598 F.3d 161, 166 (4th Cir. 2010), aff'd, 563 U.S. 816 (2011). The court also moved vertically down the offense level column. See, e.g., Dalton, 477 F.3d at 200. In doing so, the court moved down one level to offense level 24 and found that it adequately reflected the nature, number, and seriousness of Smith's prior convictions and the likelihood of Smith committing other serious crimes. Cf., e.g., United States v. Parker, 289 F. App'x 666, 668 (4th Cir. 2008) (per curiam) (unpublished); Lamb, 1998 WL 413995, at *4; United States v. Stokes, 56 F.3d 62, 1995 WL 318566, at *1 (4th Cir. 1995) (per curiam) (unpublished table decision). Coupling criminal history category VI and offense level 24 yields an advisory guideline sentencing range of 100 to 125 months' imprisonment. See U.S.S.G. Chap. 5, pt. A. Although the statutory maximum on each count of conviction is 120 months' imprisonment, the court could run the sentence on one count consecutively to impose a 125 month advisory guideline sentence. See U.S.S.G. § 5G1.2(d). Moreover, under the advisory guideline system, Smith's theoretical statutory maximum in this case is 120 months' imprisonment on each count to run consecutively. See United States v. Hallman, 549 F. App'x 147, 148–49 (4th Cir. 2013) (per curiam) (unpublished); United States v. Allen, 491 F.3d 178, 194–95 (4th Cir. 2007).

During the sentencing hearing, the court also addressed Smith's motions for a downward departure under U.S.S.G. §§ 5H1.1 and 5H1.3. Under section 5H1.1, the court may consider age in determining whether a departure is warranted "if considerations based on age, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines." U.S.S.G. § 5H1.1. Furthermore, age may be a reason to depart when the defendant is elderly and infirm and where other forms of punishment

may be equally efficient and less costly than a term of imprisonment. See id. Under section 5H1.3, the court may consider mental and emotional conditions in determining whether a departure is warranted "if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines." U.S.S.G. § 5A1.3. A court may depart based on the factors in section 5H1.1 and 5H1.3 when extraordinary circumstances are present. See, e.g., United States v. Jones, 18 F.3d 1145, 1148 (4th Cir. 1994).

The court declined to depart under either section 5H1.1 or 5H1.3. As for section 5H1.1, Smith is a very healthy person and does not have any infirmities covered by section 5H1.1. As for section 5H1.3, Smith argued that a departure is appropriate under this policy statement because he allegedly suffers from posttraumatic stress disorder due to his time in prison and has been prescribed Zoloft, Seroquel, and Xanax. Even if Smith was being treated for posttraumatic stress disorder before his arrest, the court finds that any such mental or emotional conditions are not present to an unusual degree so as to distinguish Smith's case from the typical case covered by the guidelines. Furthermore, considering Smith's unwavering dedication to criminality, a downward departure is not warranted or appropriate.

Smith also argued that the court should downwardly depart under U.S.S.G. § 5K2.0, which allows the court to consider factors not taken into account by other guideline provisions in determining whether a departure is warranted. Smith argued that the court should downwardly depart under section 5K2.0 to avoid unwarranted sentencing disparities between Smith and other co-defendants in this case. Smith argued that it will create an unwarranted sentencing disparity to sentence Smith to more time than other co-defendants who were members of the Nine Trey Billy Badass street gang, given that Smith was not a member of the gang.

15

The court rejected the argument. Each co-defendant received an individualized sentence based on his offense of conviction, relevant conduct, cooperation or lack of cooperation, and criminal history. Smith is not similarly situated when compared to other co-defendants because he pleaded guilty to different offenses and has a different criminal history, notably one that is aggravated and relentless. Accordingly, the court denied Smith's motion for a downward departure.

## B.

The court next considered whether the resulting advisory guideline sentencing range serves the factors set forth in 18 U.S.C. § 3553(a). The court recognized its obligation to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [18 U.S.C. § 3553(a)(2)]." 18 U.S.C. § 3553(a); see, e.g., Spears, 555 U.S. at 264–68; Gall, 552 U.S. at 49–50. These purposes include the need for the sentence imposed to reflect the seriousness of the offenses, promote respect for the law, provide just punishment for the offenses, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant. See 18 U.S.C. § 3553(a)(2)(A)–(C). The court considered all of the factors set forth in 18 U.S.C. § 3553(a), and the arguments of each party. The court selected a sentence in light of the section 3553(a) factors, and explained the rationale for its sentence. See Spears, 555 U.S. at 264–68; Gall, 552 U.S. at 46, 50; Carter, 564 F.3d at 328; Evans, 526 F.3d at 164–65.

As for the nature and circumstances of the offense, the offenses of conviction are very serious. Given Smith's lengthy criminal history, including multiple felony convictions, he had no right to possess a firearm. Yet, Smith not only possessed a firearm, but he transferred a firearm and a military-grade ballistic vest to his step-grandson Kejuan Smith, a violent leader of a violent street gang associated with the United Blood Nation. Smith sold this .45 caliber handgun while knowing of his step-grandson's criminal and violent behavior and while knowing that the handgun would be

used in connection with another felony offense. Although Smith was able to sell Kejuan Smith only one .45 caliber handgun and a military-grade ballistic vest, he originally agreed to sell Kejuan Smith three .45 caliber handguns and a military-grade ballistic vest. The instant offenses are just the latest examples of Smith's disrespect for the law. The court imposed a sentence that recognizes the seriousness of Smith's offenses and promotes respect for the law. Anything less than a substantial period of incarceration for Smith would promote disdain—rather than respect—for the law.

As for Smith's history and characteristics, Smith is 63 years old and has an astonishing criminal record that began at age 18 and defies recidivism statistics. See PSR ¶¶ 58–74. Smith has essentially no work history and was dishonorably discharged from the Army. Instead of rejecting a criminal lifestyle and seeking to make an honest living, Smith has returned time and again to a life of crime. At age 31, an age where statistics generally show people aging out of crime, Smith was convicted of being found in a building with the intent to commit larceny. At age 34, Smith was convicted of assault with a deadly weapon with intent to kill inflicting serious injury after he shot an individual in the lower left forehead. Officers also recovered a box cutter concealed in Smith's back pants pocket. Shortly after serving his sentence for his assault with intent to kill conviction, Smith was convicted of felony possession of cocaine. Then, at age 39, Smith was convicted in federal court of possession with intent to distribute cocaine, maintaining a dwelling for the purpose of distributing a controlled substance, possession of a firearm by a felon, and employment of a person under 18 years of age to distribute a controlled substance. While in federal custody, Smith received sanctions for two incidents of refusing to obey an order, possessing a non-hazardous tool, assault without serious injury, destroying property of $100 or less, refusing work or program assignment, being insolent to a staff member, possessing a dangerous weapon, threatening bodily harm, failing to stand count, four incidents of fighting with another person, and two incidents of

disruptive conduct. When Smith was released from federal custody after receiving a significant cut to his sentence, Smith squandered his second opportunity at life and immediately returned to his criminal lifestyle. Smith repeatedly violated the terms of his supervised released, received an additional term of incarceration for the violations, and was convicted of assault on a female in state court. Both specific and general deterrence are critical in this case, particularly given Smith's offense behavior, criminal record, violent conduct, and near certain likelihood of recidivism. Society has long needed protection from Smith, and Smith's sentence is designed to provide that protection.

The court imposed a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment for the offenses, and affords adequate deterrence to criminal conduct (both to Smith personally and others like him). The sentence also provided the public much needed protection from further crimes of Smith. Thus, for the reasons explained in open court and in this order, the court sentenced Smith to 120 months' imprisonment on each count to run concurrently.

Alternatively, the court noted that it would impose the same sentence as a variant sentence even if it has incorrectly calculated the advisory guideline sentencing range or incorrectly departed. See, e.g., United States v. Gomez–Jimenez, 750 F.3d 370, 382–86 (4th Cir. 2014); United States v. Hargrove, 701 F.3d 156, 160–65 (4th Cir. 2012); United States v. Savillon-Matute, 636 F.3d 119, 123–24 (4th Cir. 2011). As explained in open court and in this order, the court found that the alternative variant sentence of 120 months' imprisonment on each count is the sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in [the sentencing statute]." 18 U.S.C. § 3553(a); cf., e.g., Spears, 555 U.S. at 264–68; Evans, 526 F.3d at 162–66 (affirming variant sentence of 125 months, even though advisory guideline range before upward departure was 24 to 30 months); United States v. Vowell, 516 F.3d 503, 511–13 (6th Cir. 2008)

18

(affirming variant sentence of 780 months, even though advisory guideline range was 188 to 235 months); United States v. Pinson, 542 F.3d 822, 836–38 (10th Cir. 2008) (affirming variant sentence of 240 months, even though advisory guideline range was 84 to 105 months). Again, the court noted that Smith's conduct, both in this case and his criminal history generally, is serious, that he is a recidivist's recidivist, and that society needs protection from him. Furthermore, Smith repeatedly has demonstrated a lack of respect for the law despite repeated leniency. See United States v. Turcios-Flores, 368 F. App'x 397, 398–99 (4th Cir. 2010) (per curiam) (unpublished). The court announced the balance of defendant's sentence in open court and also described defendant's appellate rights.

III.

In sum, the court imposed defendant's sentence for the reasons discussed herein and the reasons discussed in open court, which are incorporated by reference. The order provides a statement of reasons for defendant's sentence, and does not alter or amend the court's judgment announced in open court.

SO ORDERED. This _18_ day of July 2018.


JAMES C. DEVER III
Chief United States District Judge